## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| HARVEY LEE RADNEY, | CIVIL ACTION 1:15-cv-09380 |
| Plaintiff, | |
| v. | COMPLAINT |
| BAYVIEW LOAN SERVICING, LLC, NATIONSTAR MORTGAGE, LLC, CORELOGIC CREDCO, LLC, EXPERIAN INFORMATION SOLUTIONS, INC. and EQUIFAX INFORMATION SERVICES, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

NOW COMES the Plaintiff, HARVEY LEE RADNEY ("Plaintiff") by and through his attorneys, SULAIMAN LAW GROUP, Ltd., complaining of the Defendants, BAYVIEW LOAN SERVICING, LLC ("Bayview"), NATIONSTAR MORTGAGE, LLC ("Nationstar"), CORELOGIC CREDCO, LLC ("Credco"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") (collectively, "Defendants") as follows:

### NATURE OF THE ACTION

1.  Plaintiff brings this action for violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681, violations of the Fair Debt Collection Act ("FDCPA") pursuant to 15 U.S.C. §1692, and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

1

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and Defendants' conduct harmed Plaintiff in this District.

4. The Court has supplemental jurisdiction over the state law ICFA claims under 28 U.S.C. §1367.

**PARTIES**

5. Plaintiff Harvey Lee Radney is a consumer and natural person over 18-years-of-age who, at all times relevant, owned and resided at the property located at 20810 Bristol Lane, Olympia Fields, Illinois 60461("subject property").

6. Defendant Bayview is a Delaware limited liability company with its principal place of business located in Coral Gables, Florida. Bayview is a foreign company whose primary business is the collection of debts owed to others and servicing mortgage loans across the country, including the state of Illinois. Bayview is a furnisher of information to the major credit reporting agencies, including Equifax and Experian ("CRAs").

7. Defendant Nationstar is a Delaware limited liability company with its principal place of business in Texas. Nationstar is a foreign company in the business of servicing loans and collecting debts owed to others across the country, including Illinois. Nationstar is a furnisher of information to the major credit reporting agencies, including Equifax and Experian.

8. Defendant Credco is a Delaware limited liability company with its principal place of business located at 40 Pacifica Avenue, Suite 900, Irvine, California 92618 and is authorized to do business, and doing business, in the State of Illinois. Credco is in the business of assembling,

evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties. Credco disburses such consumer reports to third parties under contract for monetary compensation, including contracts with the major credit reporting agencies.

9. Defendant Equifax is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. Equifax is in the business of compiling and maintaining consumer files for the purpose of furnishing credit information about consumers to third parties on a nationwide basis, including in the State of Illinois.

10. Defendant Experian is a corporation incorporated in the state of Ohio and is authorized to do business in the State of Illinois. Experian is in the business of compiling and maintaining files on consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

### BANKRUPTCY CASE

11. On February 20, 2007, Plaintiff executed a mortgage and note in the amount of $399,200.00 ("subject debt #1" or "subject loan #1") in favor of Countrywide Home Loans, Inc. ("Countrywide"), secured by the subject property.

12. Also on February 20, 2007, Plaintiff executed a second mortgage and note in the amount of $70,769.00 ("subject debt #2" or "subject loan#2")(collectively "subject debts" or "subject loans") in favor of Countrywide, secured by the subject property.

13. Subsequent to the subject loans being issued, Countrywide merged into Bank of America, N.A. ("BOA") and on September 13, 2012 an Assignment of Mortgage was made by Mortgage Electronic Registration Systems, Inc to BOA.

14. On December 16, 2012, Plaintiff received a Transfer of Service Notice from Bayview stating: "Your loan was being serviced by BANK OF AMERICA N.A. and was transferred to us. On December 16, 2012, Bayview became your new loan servicer...Bayview Loan Servicing, LLC will start accepting mortgage payments." *See* Exhibit A, a true and correct copy of Bayview's Notice of Servicing Transfer of the subject loan.

15. Bayview acquired the servicing rights to subject loan #1 after the Plaintiff was in default and past due on the subject loan #1.

16. On December 29, 2012, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 12-50704 ("bankruptcy").

17. Schedule D of the bankruptcy petition listed the subject loan #1, a secured pre-petition debt to BOA, in the amount of $399,200.00, secured by the subject property. *See* Exhibit B, a true and correct copy of Schedule D filed in Plaintiff's bankruptcy case.

18. Schedule D of the bankruptcy petition listed the subject loan #2, a secured pre-petition debt to BOA, in the amount of $70,769.00, secured by the subject property. *See* Exhibit B.

19. Also on December 29, 2012, because Plaintiff listed BOA as a creditor, the Bankruptcy Noticing Center ("BNC") served BOA with notice of Plaintiff's bankruptcy filing and Plaintiff's Original Plan. *See* Exhibit C, a true and correct copy of the BNC Certificate of Notice establishing service of the notice of filing and Original Plan upon BOA.

20. Plaintiff's Original Plan proposed to treat BOA's claim as follows:

> "Debtor is surrendering the real property located at 20810 Bristol Lane, Olympia Fields, Illinois to Bank of America, N.A. in full satisfaction of its claims." *Id.* at p. 5.

21. On February 7, 2013, Bayview, through its counsel, Manley Deas Kochalski LLC., filed an Entry of Appearance and Request for All Notices in Plaintiff's bankruptcy case. *See* Exhibit

4

D, a true and correct copy of Bayview's Entry of Appearance and Request for All Notices filed in Plaintiff's bankruptcy.

22. On March 5, 2013, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative or attorney from BOA or Bayview appeared at the 341 Meeting of Creditors.

23. On April 2, 2013, Plaintiff's Chapter 13 Plan was confirmed by the Honorable Carol A. Doyle. *See* Exhibit E, a true and correct copy of the Confirmation Order.

24. On May 7, 2013, Bayview, through its counsel, presented its Motion for Relief from Stay and Co-Debtor Stay in Plaintiff's bankruptcy, which acknowledged Plaintiff's intent to surrender the subject property. *See* Exhibit F, a true and correct copy of Bayview's Motion for Relief from Automatic Stay and Co-Debtor Stay filed in Plaintiffs' bankruptcy case.

25. On May 28, 2013, the Bankruptcy Court granted Bayview's Motion for Relief From Automatic Stay (First Mortgage [subject debt #1]) to enforce its rights against the subject property. *See* Exhibit G, a true and correct copy of the Order Granting Bayview Relief from the Automatic Stay.[1]

26. On August 14 2013, Plaintiff received an unsolicited letter from Nationstar stating: "Nationstar Mortgage LLC recently acquired your mortgage [subject loan #2]. Our records indicate you recently filed bankruptcy." *See* Exhibit H, a true and correct copy of Nationstar's August 14, 2013 unsolicited letter to Plaintiff.[2]

27. Nationstar acquired the servicing rights to subject loan #2 after the Plaintiff was in default and past due on subject loan #2.

---

[1] Bayview services the loan on Plaintiff's first mortgage, subject property #1 for the creditor, The Bank of New York Mellon.

[2] Nationstar acquired the servicing rights to Plaintiff's second mortgage, subject debt #2.

28. Plaintiff fully performed his duties as set forth in his confirmed Chapter 13 Plan.

29. On May 14, 2014, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject loans. *See* Exhibit I, a true and correct copy of the Order of Discharge and BNC Certificate of Notice establishing service of the Order of Discharge upon Bayview, Nationstar, Equifax, and Experian.

30. The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...." *Id.* at p. 2.

31. On May 16, 2015, the BNC served Bayview, Nationstar, Equifax, and Experian with the Order of Discharge. *Id.* at p. 3.

32. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject loans by Bayview, Nationstar, or any other party.

33. Plaintiff's personal liability on the subject loans was extinguished via his bankruptcy discharge, thus terminating the business relationship with Bayview, Nationstar, and any of their successors and assigns.

### BAYVIEW'S POST-DISCHARGE COMMUNICATIONS

34. After the discharge injunction had taken effect, Bayview sought to collect the subject debt from the Plaintiff personally.[3]

---

[3] Pursuant to Plaintiffs' Chapter 13 Plan, no payments were to be made to Bayview or any of its successors or assigns as Plaintiff's Confirmed Plan surrenders the subject property to Bayview in full satisfaction of its claims.

35. After it acquired the servicing rights to subject loan #1, and with actual knowledge of Plaintiff's Chapter 13 bankruptcy and Plaintiff's subsequent discharge, Bayview began sending demands for payment on subject loan #1.

36. On May 16, 2014, Plaintiff received a dunning letter from Bayview stating: "You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of 05/16/2014, you are 653 days delinquent on your mortgage-**Total: $74,169.10 due**. **You must pay this amount to bring your loan current**." *See* Exhibit J, a true and correct copy of Bayview's May 16, 2014 dunning letter with a payment coupon attached.[4]

37. Plaintiff continued to receive dunning letters from Bayview every month after May 16, 2014. Bayview had actual knowledge of Plaintiff's bankruptcy filing.[5]

38. On August 17, 2015, Plaintiff received a dunning letter from Bayview seeking the payment of: "**Total Amount: $125,659.14**." *See* Exhibit K, a true and correct copy of Bayview's August 17, 2015 dunning letter with a payment coupon attached.

39. On September 16, 2015, Plaintiff received a dunning letter from Bayview stating: "You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of 05/16/2014, you are 1141 days delinquent on your mortgage-**Total: $129,226.48 due**." *See* Exhibit L, a true and correct copy of Bayview's September 16, 2015 dunning letter with a payment coupon attached.

---

[4] In each of Bayview's dunning letters, Bayview states: **Credit Reporting**; "We may report information about your account to credit bureaus. Late Payments, missed payments, or other defaults on your account may be reflected in your credit report."

[5] Between May 16, 2014 and August 17, 2015, Plaintiff continued to receive dunning letters from Bayview but he is currently not in possession of them.

40. Concerned about the violations of his rights and the protections afforded by virtue of filing his Chapter 13 bankruptcy, Plaintiff sought the assistance of counsel to ensure that Bayview's collection efforts ceased.

41. Plaintiff has expended time, incurring costs consulting with his attorneys as a result of Bayview's deceptive collection actions.

42. Plaintiff was unduly inconvenienced and harassed by Bayview's unlawful attempts to collect the subject debt #1.

43. Plaintiff suffered from emotional distress due to Bayview's unlawful attempts to dragoon the Plaintiff into paying the subject debt #1 as he was led to believe his bankruptcy had no legal effect.

**CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTE TO EQUIFAX**

44. In June 2015, after receiving his discharge, Plaintiff pulled his Equifax credit report.

45. Plaintiff's Equifax report revealed that Bayview was reporting subject loan #1 in default and with a high balance. The reporting was inaccurate because the subject loan was discharged in his bankruptcy and should be reported with a zero balance, without a negative payment history or other derogatory status.

**a. Plaintiff's Dispute Letter to Equifax**

46. On August 23, 2015, Plaintiff sent a written credit dispute letter to Equifax, requesting that his credit file be updated to reflect the zero balance and discharged status of all accounts discharged in his Chapter 13 bankruptcy. Plaintiff also specifically disputed the Bayview trade line. Plaintiff attached all relevant and supporting bankruptcy documents to his dispute. *See* Exhibit M, a true and correct copy of Plaintiff's August 23, 2015 dispute letter to Equifax.

47. Among other things, Plaintiff's dispute letter stated the following:

   a. "I am enclosing a copy of the Order Discharging Debtor entered on 05/14/2014;"
   b. "Please update the subject credit file(s) to reflect the discharged status of the debts;"
   c. "Consequently, I am requesting you to immediately activate the Automated Dispute Resolution System program with respect to this written notice, regarding each creditor listed on the attached Schedules D, E, and F;"
   d. "Specifically, I am requesting an investigation into the following accounts: **Bayview Loan Servicing, account # 628000062XXXX;**[6]"
   e. "This account was discharged in my Chapter 13 bankruptcy plan that allowed me to surrender the property with full satisfaction of the debt[s];"
   f. "In addition, it is my understanding that each of the above creditors is required to investigate my disputes upon receipt of notification from you of this information;" and
   g. "I request that you forward this letter, and the enclosures, to each the creditors listed above." *Id*

48. Plaintiff sent his dispute letter to Equifax via certified mail, return-receipt requested. *Id*

   **b. Equifax's Failure to Provide Written Notice of the Results of Plaintiff's Dispute**

49. On August 27, 2015, Equifax received Plaintiff's dispute letter with the attached enclosures by stamping Plaintiff's certified mail, return receipt. *See* Exhibit N, a true and correct copy of the certified mail, green card stamped by Equifax on August 27, 2015.

50. Despite Equifax's verified receipt of Plaintiff's dispute letter and enclosures on August 27, 2015, it failed to respond to Plaintiff's dispute letter.

51. Equifax failed to reinvestigate the trade line and record the trade line's disputed status despite the information provided by the Plaintiff. Nor did Equifax delete the item within 30 days of receiving Plaintiff's dispute.

---

[6] Plaintiff's dispute letter also specifically disputed the Bank of America, account #15771XXXX. This trade line was subsequently updated from the Plaintiff's credit file pursuant to the FCRA.

52. On October 6, 2015, nearly two months after Equifax received Plaintiff's dispute letter, Plaintiff pulled his Equifax report. The reporting of the Bayview trade line remains on Plaintiff's Equifax credit report and is still inaccurate as Plaintiff is no longer liable on the subject loan.

53. Reporting an "Account Balance," an "Amount Past Due," and a "Scheduled Payment Amount" inaccurately implies that Plaintiff is delinquent and owes the monthly amount. See Exhibit O, a true and correct copy of the pertinent parts of Plaintiff's October 6, 2015 Equifax credit report showing the inaccurate Bayview trade line.

54. As of today, Equifax has yet to respond to Plaintiff's August 23, 2015 dispute letter and update or delete the inaccurate information on Plaintiff's credit file.

**CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTE TO EXPERIAN**

55. In June 2015, after receiving his discharge, Plaintiff pulled his Experian credit report.

56. Plaintiff's Experian report revealed that Bayview was reporting subject loan #1 in default and with a high balance. The reporting was inaccurate because the subject loan was discharged in his bankruptcy and should be reported with a zero balance, without a negative payment history or other derogatory status.

**a. Plaintiff's Dispute Letter to Experian**

57. On August 23, 2015, Plaintiff sent a written credit dispute letter to Experian, requesting that his credit file be updated to reflect the zero balance and discharged status of all accounts discharged in his Chapter 13 bankruptcy. Plaintiff also specifically disputed the Bayview trade line [**Account # 628000062XXXX**]. Plaintiff attached all relevant bankruptcy documents to his dispute. *See* Exhibit P, a true and correct copy of Plaintiff's August 23, 2015 dispute letter to Experian.

10

58. Among other things, Plaintiff's dispute letter to Experian stated the following:

   a. "I am enclosing a copy of the Order Discharging Debtor entered on 05/14/2014;"
   b. "Please update the subject credit file(s) to reflect the discharged status of the debts;"
   c. "Consequently, I am requesting you to immediately activate the Automated Dispute Resolution System program with respect to this written notice, regarding each creditor listed on the attached Schedules D, E, and F;"
   d. "Specifically, I am requesting an investigation into the following accounts: **Bayview Loan Servicing, account # 628000062XXXX;**[7]"
   e. "This account was discharged in my Chapter 13 bankruptcy plan that allowed me to surrender the property with full satisfaction of the debt[s];"
   f. "In addition, it is my understanding that each of the above creditors is required to investigate my disputes upon receipt of notification from you of this information;" and
   g. "I request that you forward this letter, and the enclosures, to each the creditors listed above." *Id*

59. Plaintiff sent his dispute letter to Experian via certified mail, return-receipt requested. *Id.*

60. Upon information and belief, Bayview received notice from Experian within five days of the date Experian received Plaintiff's dispute letter.

### d. Experian's Response to Plaintiff's Dispute Letter[8]

61. On September 4, 2015, Experian responded to Plaintiff's dispute letter stating that it had updated the trade line and the balance for the Bayview account. *See* Exhibit Q, a true and correct copy of the pertinent parts of the results of Plaintiff's dispute letter to Experian.

62. Despite its representation that the Bayview account was listed as included in bankruptcy, Bayview and Experian were still reporting the subject loan #1 with an "Account Balance" of

---

[7] Plaintiff's dispute letter also specifically disputed the Bank of America, account #15771XXXX with Experian. This trade line was subsequently updated from the Plaintiff's credit file pursuant to the FCRA.

[8] It should be noted that Trans Union deleted the Bayview account trade line associated with the subject loan following its investigation into Plaintiff's dispute letter. Upon information and belief, Trans Union deleted the account because its investigation revealed that the information provided by Bayview was inaccurate.

$399,200.00 and a "Scheduled Payment Amount" of $2,890.00 from the date of Plaintiff's bankruptcy discharge through July of 2015. *Id.* at p.5.

63. The reporting of the Bayview trade line was still inaccurate because Plaintiff was no longer liable on the subject loan #1. Reporting an "Account Balance," and a "Scheduled Payment Amount" inaccurately implies that Plaintiff is delinquent and owes the monthly amount.

### IMPACT OF CONTINUING
### INCORRECT REPORTING ON PLAINTIFF'S CREDIT FILES

64. As of today, the erroneous reporting of the Baview account continues to paint a false and damaging picture of Plaintiff. Experian and Equifax has yet to update the Bayview account to accurately reflect the zero Balances and discharged status of the subject loan.

65. The entire experience has engendered within Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff hopeless as to his ability to regain his good name and the credit rating that he deserves and has worked hard to earn by completing his Chapter 13 Plan.

66. The inaccurate reporting of subject loan #1 continues to have significant adverse effects on Plaintiff's credit rating and his ability to obtain financing because it creates a false impression that the Bayview account is delinquent, rendering Plaintiff a high risk consumer.

67. As a result of the conduct, actions, and inaction of Bayview, Equifax and Experian, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his dispute, monitoring his credit file, and mental and emotional pain and suffering.

68. Moreover, Plaintiff has been denied credit on numerous occasions as a result of Defendants' erroneous and inaccurate credit reporting.

69. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to resolve the erroneous credit reporting of the Bayview trade line.

### NATIONSTAR AND CREDCO'S UNLAWFUL ACCESS OF PLAINTIFF'S CREDIT REPORTS UNDER FALSE PRETENSES AND/OR FOR AN IMPERMISSIBLE PURPOSE

#### a. Impermissible Credit Inquiry By Nationstar and Credco on Plaintiff's Credit Report

70. On September 4, 2015, after Plaintiff sent his dispute letter to Experian, Experian responded to Plaintiff's dispute letter by providing Plaintiff with the results of his dispute. Plaintiff found that his Experian credit report was showing a unauthorized inquiry from Nationstar after Plaintiff's bankruptcy discharge.

71. Three months after Plaintiff's discharge, Experian furnished Plaintiff's credit report to Nationstar and Credco on August 5, 2014 for use in the collection of subject debt #2.

72. On August 5, 2014, Nationstar and Credco requested and received copies of all, or portions of, Plaintiff's personal credit information maintained by Experian. *See* Exhibit R, a true and correct copy of the relevant portion of Plaintiff's September 4, 2015 Experian report showing the impermissible pull.

73. Nationstar and Credco intentionally misrepresented to Experian that Plaintiff was attempting to obtain credit with them, had a current credit relationship, or had a current business relationship with the Plaintiff. Nationstar and Credco's misrepresentation and false certification resulted in Experian releasing highly confidential and sensitive personal information concerning Plaintiff to Nationstar and Credco.

13

74. Plaintiff had no account or business transactions with Nationstar or Credco at the time this request was made. Plaintiff's previous indebtedness to Nationstar had been extinguished via his bankruptcy discharge. There were no other business transactions between the parties.

75. Nationstar and Credco accessed Plaintiff's credit report without his consent or knowledge.

76. Nationstar and Credco obtained Plaintiff's credit report and/or credit information under false pretenses. The purported purpose of the access was for an "Account Review" on an account that no longer existed.

77. Plaintiff had no open accounts to be "reviewed" by Nationstar or Credco, after receiving his bankruptcy discharge on May 14, 2014. Nationstar had actual knowledge of Plaintiff's discharge. *See* Exhibit I.

78. It is Nationstar and Credco's standard business pattern and practice to illegally access consumer reports under false pretenses. Despite numerous disputes complaining about illegal access to consumer credit reports, Nationstar and Credco intentionally and knowingly failed to correct their policy of accessing these reports under false pretenses.

79. The actions taken by Nationstar and Credco were done with malice. They were done wantonly, recklessly, and willfully, and were done with either the desire to harm Plaintiff or with the knowledge that their actions would very likely harm Plaintiff. Their actions were taken in violation of the law.

80. Nationstar and Credco knew and continue to have knowledge that a discharge order means that a debt is no longer collectible. Nationstar and Credco have willfully and maliciously acted contrary to that when it decided to invade Plaintiff's privacy, violating federal law.

81. Nationstar and Credco have engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and consumer credit reports.

82. Nationstar and Credco both negligently and willfully violated the Fair Credit Reporting Act by impermissibly obtaining Plaintiff's credit report.

83. Nationstar and Credco had no legitimate business need for Plaintiff's credit report at the time that they requested a copy of Plaintiff's credit report from Experian. Any debtor-creditor relationship that Plaintiff had with Nationstar was terminated upon Plaintiff's bankruptcy discharge. The inquiry was recorded on Plaintiff's credit report and decreased Plaintiff's credit score. *Id*.

## IMPACT OF
### IMPERMISSIBLE PULLS OF PLAINTIFF'S CREDIT FILE

84. The conduct of Nationstar and Credco have caused Plaintiff damages in the form of invasion of privacy, emotional distress, mental anguish, loss of sleep, and a decreased credit score.

85. Due to the conduct of Nationstar and Credco, Plaintiff was forced to retain counsel and his damages include reasonable attorney's fees and costs incurred in prosecuting this claim.

86. Due to Nationstar and Credco's conduct, Plaintiff is entitled to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Nationstar and Credco.

## COUNT I - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST BAYVIEW)

87. Plaintiff restates and realleges paragraphs 1 through 86 as though fully set forth herein.

88. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

89. Bayview is a "person" as defined by 15 U.S.C. §1681a(b).

90. Bayview is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

91. Bayview violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Experian and Plaintiff.

92. Bayview violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Experian and Plaintiff.

93. Had Bayview reviewed the information provided by Experian and Plaintiff, it would have corrected the inaccurate designation of the subject loan #1, transmitting the correct information to Experian. Instead, Bayview wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

94. Bayview violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's file. Instead, Bayview reinserted the inaccurate information into Plaintiff's credit report after Plaintiff's dispute.

95. Bayview violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's disputes with Experian.

96. Bayview violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Experian after being put on notice and discovering inaccurate reporting with respect to the subject loan #1.

97. Bayview failed to conduct a reasonable reinvestigation of its reporting of the subject loan #1, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from Equifax under 15 U.S.C. §1681i(a)(1).

98. Bayview violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

99. Despite the blatantly obvious errors on Plaintiff's credit file, and Plaintiff's efforts to correct the errors, Bayview did not correct the errors or trade line to report accurately. Instead, Bayview wrongfully furnished and re-furnished false and erroneous information that the subject loan #1 was delinquent by willfully re-reporting the inaccurate trade line after Plaintiff's dispute.

100. A reasonable investigation by Bayview would have confirmed the veracity of Plaintiff's dispute, yet the inaccurate information continues to be reported on Plaintiff's credit files.

101. Had Bayview taken steps to investigate Plaintiff's valid disputes or Experian's requests for investigation, it would have permanently corrected the erroneous credit reporting. Plaintiff provided all relevant information in his request for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily accessible.

102. By deviating from the standards established by the mortgage servicing industry and the FCRA, Bayview acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Experian.

WHEREFORE, Plaintiff HARVEY LEE RADNEY requests that this Honorable Court:
a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Order the deletion or modification of all adverse credit reporting relating to the subject loans;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;
d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
f. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
(AGAINST BAYVIEW)

103. Plaintiff restates and realleges paragraphs 1 through 86 as though fully set forth herein.

104. The Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

105. Subject debt #1 qualifies as a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction for personal, family, or household purposes.

106. Bayview qualifies as a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

107. Bayview qualifies as a "debt collector" because it acquired rights to the subject debt #1 after it was in default. 15 U.S.C. §1692a(6).

108. Bankruptcy Code §524(a)(2)-(3) commonly known as the "discharge injunction," prohibits "an act, to collect, recover or offset any such debt as a personal liability of the debtor," and "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor." 11 U.S.C. §§524(a)(2)-(3).

109. Bayview violated 15 U.S.C. §§1692e(2), e(8), e(10), and f(1), through its debt collection efforts on a debt discharged in bankruptcy.

### a. Violations of FDCPA §1692e

110. Bayview violated §1692e(2) when it misrepresented the character, amount, or legal status of subject debt #1. The subject debt was not owed at the time Bayview demanded payment of the subject debt because it was discharged in Plaintiff's Chapter 13 bankruptcy.

111. Bayview violated §1692e(8) by communicating false credit information to Equifax and Experian that it knew, or should have known, to be false, including the failure to communicate that the subject loan was disputed.

112. Bayview violated 15 U.S.C. §§1692e(8), through their debt collection efforts on a debt discharged in bankruptcy. Bayview attempted to coerce and induce the Plaintiff into paying a debt that was not legally owed by inaccurately reporting on Plaintiff's credit reports.

113. Bayview violated §1692e(10) when it falsely represented that the subject debt was collectible at the time of the demands as the subject debt was not owed by virtue of Plaintiff's bankruptcy discharge.

### b. Violations of FDCPA §1692f

114. Bayview violated §1692f(1) by attempting to collect a debt not permitted by law as the discharge injunction precludes collection of any discharged debt.

115. Bayview attempted to dragoon and induce the Plaintiffs into paying a debt that was not legally owed.

116. As an experienced creditor and debt collector, Bayview knew or should have known the ramifications of collecting on a debt that was discharged in bankruptcy.

117. Bayview knew or should have known that Plaintiff's discharged debt was uncollectable as a matter of law.

118. Upon information and belief, Bayview has no system in place to identify and cease collection of debts discharged in bankruptcy.

WHEREFORE, Plaintiff HARVEY LEE RADNEY requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

d. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EQUIFAX)

119.  Plaintiff restates and realleges paragraphs 1 through 86 as though fully set forth herein.

120.  Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

121.  Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

122.  If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

123.  Plaintiff notified Equifax of his dispute and provided it with all relevant information and documentation in his request for investigation and reinvestigation to reflect that he obtained a discharge and is no longer liable on the subject loan #1. *See* Exhibit M.

124.  Equifax received Plaintiff's dispute letter with all relevant documents attached as revealed by its stamped certified return-receipt dated August 27, 2015. *See* Exhibit N.

125. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the erroneous information on Plaintiff's credit file.

126. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to reinvestigate Plaintiff's valid dispute within 30 days of Equifax receiving Plaintiff's dispute letter.

127. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the subject loan.

128. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's dispute.

129. Equifax violated 15 U.S.C. §1681i(a)(6)(A) by failing to provide the Plaintiff with written notice of the results of its reinvestigation no later than five business days after the completion of the reinvestigation.

130. Equifax violated 15 U.S.C. §1681i(a)(6)(B) by failing to provide the Plaintiff a statement that the reinvestigation was completed, and failing to provide a consumer report showing the revisions resulting from *any* reinvestigation of Plaintiff's credit file.

131. Had Equifax taken *any* steps to investigate Plaintiff's valid dispute, it would have determined that the subject loan was discharged in bankruptcy.

132. Equifax failed to send the Plaintiff *any* correspondence stating that it had updated its records to reflect Plaintiff's bankruptcy discharge, instead it willfully continued to report the inaccurate information after Plaintiff's dispute.

133. Moreover, after Plaintiff's written dispute, Equifax had specific information related to Plaintiff's bankruptcy case and subsequent discharge because Plaintiff provided his discharge order along with his written dispute.

21

134. Equifax knew that the inaccurate reporting of the subject loan on Plaintiff's credit report under the Bayview trade line would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after bankruptcy.

135. The FCRA requires that the credit reporting bureaus implement procedures and systems to promote accurate credit reporting.

136. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished regarding the Plaintiff.

137. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with reckless disregard for its duty to report accurate and complete consumer credit information.

138. Equifax's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting Plaintiff's credit information.

139. As a result of the conduct, actions, and inaction of Equifax, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit files, and mental and emotional pain and suffering.

140. Equifax's conduct was willful, rendering each liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, Plaintiff HARVEY LEE RADNEY requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion of all adverse credit reporting;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT IV - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EXPERIAN)

141.  Plaintiff restates and realleges paragraphs 1 through 86 as though fully set forth herein.

142.  Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

143.  Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

144.  Plaintiff provided Experian with all relevant information and documentation in his requests for investigation to reflect the discharged status of the subject loan #1.

145.  Experian prepared Plaintiff's credit reports containing inaccurate information by reporting the subject loan with a high balance,  and a scheduled payment amount, when in fact he had received a bankruptcy discharge and owed no balance, and was not obligated to make a monthly payment in relation to the subject loan.

146. A simple review of the documents submitted by Plaintiff would have confirmed that Plaintiff had received a discharge and no longer owed a balance, and no longer had an obligation to make monthly payments to Bayview.

147. Had Experian taken *any* steps to investigate Plaintiff's valid dispute, it would have determined that the subject loan was discharged in bankruptcy.

148. Instead, Experian sent Plaintiff a correspondence stating that it had updated its records to reflect Plaintiff's bankruptcy discharge, at the same time that it willfully continued to report the inaccurate information.

149. Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished regarding the Plaintiff.

150. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the erroneous information on Plaintiff's credit file.

151. Experian violated 15 U.S.C. §1681i(a)(2) by failing to record all relevant information that it received from Bayview and Plaintiff with regard to Plaintiff's credit report and the subject loan.

152. Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and Bayview with regard to the subject loan.

153. Experian violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's dispute.

154. Experian violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Bayview that the information was complete and accurate, and without sending

notice of the re-reporting to Plaintiff. The lack of notice and correction caused Plaintiff to pull his credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiff's credit worthiness and credit score.

155. Since *all* of Plaintiff's other accounts were reported as "$0 balances owed," "included in bankruptcy," or "discharged," Experian should have investigated why the Bayview trade line, and only the Bayview trade line, still reported as "owing," and "a scheduled payment amount."

156. Moreover, after Plaintiff's written disputes, Experian had specific information related to Plaintiff's bankruptcy case and discharge order, which included the subject loan.

157. Experian knew that the inaccurate designation of the subject loan on Plaintiff's credit report under the Bayview trade line as in default, and with a high balance owed after his bankruptcy discharge would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after bankruptcy.

158. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

159. By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with reckless disregard for its duties to report accurate and complete consumer credit information.

160. It is Experian's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

161. Experian's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting Plaintiff's credit information.

162. Experian acted reprehensibly by perpetually reporting the Bayview account as delinquent, in default, and owing a high balance.

163. As a result of the conduct, actions, and inaction of Experian, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and the mental and emotional pain and suffering, anguish, humiliation, and embarrassment of constant credit denials.

164. Experian's conduct was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, Plaintiff HARVEY LEE RADNEY requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion of all adverse credit reporting;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT V - VIOLATION OF THE FAIR CREDIT REPORTING ACT
#### (AGAINST NATIONSTAR)

165. Plaintiff restates and realleges paragraphs 1 through 86 as though fully set forth herein.

166. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

167. Nationstar is a "person" as defined by 15 U.S.C. §1681a(b).

168. Nationstar is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

169. The FCRA prohibits any person or entity from using or obtaining a consumer credit report unless the user has a permissible purpose enumerated under the FCRA. *See* 15 U.S.C. §1681b(f).

170. Nationstar requested, and received, copies of Plaintiff's consumer credit report maintained by Experian without the Plaintiff's consent, or for any permissible purpose, after Plaintiff received a discharge in bankruptcy.

171. Plaintiff's Chapter 13 bankruptcy discharge ended any business relationship between Plaintiff and Nationstar. Nationstar did not have a legitimate business purpose for Plaintiff's credit reports under the FCRA.

172. The FCRA prohibits any person or entity from using or obtaining a consumer credit report unless the user has a permissible purpose pursuant to the FCRA. 15 U.S.C. §1681b(f).

173. Nationstar willfully and maliciously violated §1681b(f) when it accessed Plaintiff's credit report without any permissible purpose under the FCRA.

174. In the alternative, Nationstar negligently violated §1681b(f) by accessing Plaintiff's credit files without a permissible purpose under the FCRA.

175. Plaintiff was harmed by Nationstar's conduct because the impermissible pull of Plaintiff's credit reports contributed to a lower credit score and denials of credit.

176. Nationstar's violations have deprived the Plaintiff of the right to control his own personal information, which is a major aspect of privacy that is protected by the FCRA.

WHEREFORE, Plaintiff HARVEY LEE RADNEY requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Order the deletion or modification of all adverse credit reporting relating to the subject debt;
c. Defendant lacked a permissible purpose in accessing Plaintiff's credit history stored on Experian's database in violation of §1681b(f).
d. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;
e. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
g. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and
h. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT VI - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST CREDCO)

177. Plaintiff restates and realleges paragraphs 1 through 86 as though fully set forth herein.

178. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

179. Credco is a "person" as defined by 15 U.S.C. §1681a(b).

180. Credco is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

181. Credco is a "reseller" as defined by U.S.C. §1681a(u).

182. The FCRA prohibits any person or entity from using or obtaining a consumer credit report unless the user has a permissible purpose enumerated under the FCRA. *See* 15 U.S.C. §1681b(f).

183. Credco requested and reviewed Plaintiff's private financial information contained in his consumer report, as the term is defined by 15 U.S.C. §1681a(d).

184. Credco requested and received copies of Plaintiff's consumer credit report maintained by Experian, on behalf of Nationstar, without the Plaintiff's consent, or for any permissible purpose, after Plaintiff received a discharge in bankruptcy.

185. Plaintiff's Chapter 13 bankruptcy discharge ended any business relationship between Plaintiff and Nationstar. Thus, Credco did not have a legitimate business purpose for Plaintiff's credit reports under the FCRA.

186. The FCRA prohibits any person or entity from using or obtaining a consumer credit report unless the user has a permissible purpose pursuant to the FCRA. 15 U.S.C. §1681b(f).

187. Credco willfully and maliciously violated §1681b(f) when it accessed Plaintiff's credit report without any permissible purpose under the FCRA.

29

188.  In the alternative, Credco negligently violated §1681b(f) by accessing Plaintiff's credit files without a permissible purpose under the FCRA.

189.  As the result of Credco's actions, Plaintiff suffered substantial actual damages, including but not limited to, the loss of his right to keep his private financial information confidential, the loss of his rights to information about who was viewing his private financial information and how his private financial information was affecting actions taken on his applications of credit, the loss of credit itself, the loss of time, harm to his credit rating, and other emotional and mental anguish.

190.  Credco's violations have deprived the Plaintiff of the right to control his own personal information, which is a major aspect of privacy that is protected by the FCRA.

WHEREFORE, Plaintiff HARVEY LEE RADNEY requests that this Honorable Court:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b.  Order the deletion or modification of all adverse credit reporting relating to the subject debt;
c.  Defendant lacked a permissible purpose in accessing Plaintiff's credit history stored on Experian's database in violation of §1681b(f).
d.  Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;
e.  Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;
f.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
g.  Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and
h.  Award any other relief as this Honorable Court deems just and appropriate.

<u>COUNT VII – VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT</u>
(AGAINST BAYVIEW)

191.  Plaintiff restates and realleges paragraphs 1 through 86 as through fully set forth herein.

192.  Plaintiff is a  "person" and a "consumer" as defined in ICFA, 815 ILCS 505/ (c) and (e) respectively.

**a. Unfairness**

193.  Bayview is engaged in commerce in the State of Illinois with regard to Plaintiff, the subject loan, and the subject property. Bayview specializes in lending, servicing, and debt collection, which are activities within the stream of commerce and utilized in their regular course of business. 815 ILCS 505/1(f).

194.  Bayview's demands for payment on the subject loan, which was duly scheduled in Plaintiff's bankruptcy and subsequently discharged, represents the use of false pretenses and misleading communication to attempt to collect a debt that was not owed at the time the demands for payment were made.

195.  It was unfair for Bayview to seek to collect the subject loan from the Plaintiff through misleading dunning letters after it received a notice of Plaintiff's discharge.

196.  It was unfair for Bayview to attempt to dragoon the Plaintiff into making payments on an  uncollectible loan by repeatedly sending dunning letters.

197.  Bayview intended that Plaintiff rely on its unfair acts.

**b. Deception**

198.  Bayview's demands for payment represent the use of deception, fraud, and false pretenses in an attempt to collect a debt because it was not owed at the time the demands for payment were made.

31

199. Bayview's demands were deceptive because they were systematically calculated to mislead Plaintiff into believing the subject debt was owed, when in fact the subject debt was discharged in Plaintiff's bankruptcy.

200. Bayview's demands for payment were systematically calculated to induce payment on a debt that is no longer owed.

201. Such deceptive conduct is harmful to Illinois consumers as it can result in Illinois consumers paying debts that are not owed.

202. As pled above, Plaintiff has suffered damages as a result of Bayview's deceptive collection practices.

203. An award of punitive damages is appropriate because Bayview's conduct described above was outrageous, willful and wanton, showing a reckless disregard for the rights of Plaintiff and consumers.

WHEREFORE, Plaintiff HARVEY LEE RADNEY requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against Bayview;

b. Award Plaintiff his actual damages in an amount to be determined at trial;

c. Award Plaintiff his punitive damages in an amount to be determined at trial;

d. Award Plaintiff his reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and

e. Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

**Dated:** October 22, 2015     **Respectfully Submitted,**

**/s/ Matthew H. Hector**
Matthew H. Hector ARDC#6283058
Counsel for Plaintiff
Sulaiman Law Group, LTD
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
mhector@sulaimanlaw.com